UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------x
DANIEL GILL,

                Plaintiff,

-v-

RUDOLPH W. GIULIANI,
THE CITY OF NEW YORK,
P.O. MATTHEW T. MCCARTHY
DETECTIVE MICHAEL LEVAY
SGT. FNU MILATTA
SGT. JAMES COUGHLIN
SUPERVISER(S) JOHN DOE(S)

                Defendants.
------------------------------------------------------------x

## COMPLAINT

## A JURY TRIALIS DEMANDED

"Someone needs to remind former Mayor Giuliani that falsely reporting a crime is a crime…What he stated, there was a lot of creativity, and I think the district attorney, he has the wrong person he is investigating. ... When you look at the video, the guy basically walked by and patted him on the back."

-   Mayor Eric Adams,
https://www.politico.com/news/2022/06/28/giuliani-adams-false-police-report-00042811

1. Plaintiff DANIEL GILL, by his attorney, the Law Office of Ronald L. Kuby, complaining of the defendants, respectfully allege, upon information and belief, as well as personal knowledge, as follows:

## NATURE OF THE ACTION

2. This is a civil action, pursuant to 42 U.S.C. Secs. 1983, 1985 and 1988, and New York State tort law, seeking monetary damages from defendants for false arrest, civil rights conspiracy resulting in false arrest and false imprisonment, defamation, intentional infliction of emotional distress, and negligent infliction of emotional distress.

3. On June 26, 2022, plaintiff Gill was working at his customary job at ShopRite, located in Staten Island. Defendant Giuliani, campaigning for his son's vanity run for Governor of the State of New York, entered that venue for a typical campaign "meet-and-greet." While defendant Giuliani was among his supporters, plaintiff Gill placed his hand on defendant Giuliani's back, and called him a "scumbag." Video footage captured the entire encounter.

4. One person called 911 and the Police Defendant McCarthy and P.O. Wiech[1] arrived on the scene, followed by other NYPD officers and Defendant Sgt. Milatta.

---

[1] From information thus far available, it appears that P.O. Wiech did not actually engage in any specific misconduct, other than failing to intervene.

5. The Police Defendants named herein, and Defendant Giuliani agreed to deprive Plaintiff of his liberty.  At the insistence of Defendant Giuliani, Plaintiff was falsely arresting him for a violent felony offense.  At the insistence of Defendant Giuliani, the Plaintiff was "put through the system" and incarcerated for 21 hours prior to arraignment. The Defendants did so despite possessing the surveillance video that conclusively belied Defendant Giuliani's account of what transpired and established that Plaintiff committed no crime. They did so despite the fact that the Police Defendants, and other members of the NYPD, all stated they should watch the video before taking any action against Plaintiff.  Plaintiff explained that he "tapped" Defendant Giuliani to get his attention; a version of events completely corroborated by the video.

6.  Due to the false arrest and the inflated nature of the charge, Plaintiff was denied a Desk Appearance Ticket, based on the false statement by Police Defendants that there was an immediate need to seek an Order of Protection.

7. Plaintiff spent 21 hours in custody and was released on June 27, 2022, after the charges were downgraded to a misdemeanor. They have been since been dismissed.

8. Defendant Giuliani, not satisfied with the result of his unlawful agreement with the NYPD to detain defendant, went on a media tour touting, expanding upon, embellishing, and outright lying about his "wounds" from the encounter, falsely

claiming that he was suffering a variety of serious physical injured of a result of the "attack," and engaging in a pattern of false and defamatory statements against Plaintiff, both before and after the videotape was publicly released.

9. Plaintiff now seeks damages for this intentional misconduct.

## JURISDICTION AND VENUE

10. This action arises under 42 U.S.C. Secs. 1983, 1985, and 1988, and the common law of the State of New York.

11. Jurisdiction is conferred on this Court by 28 U.S.C. Secs. 1331, 1343, and by the authority of pendant jurisdiction.

12. Venue is proper in this Court pursuant to 28 U.S.C. Sec. 1391(b)(1).

13. This action was commenced within one year of the accrual of the causes of action.

14. Plaintiff timely filed a Notice of Claim and participated in an oral examination.

15. Plaintiff has complied with all conditions precedent to the commencement of this action.

## THE PARTIES

16. Plaintiff Daniel Gill is an adult citizen of the United States and the State of New York. He has been gainfully employed his entire adult life.

17. Defendant Rudolph W. Giuliani is a disbarred lawyer, currently under a myriad of criminal investigations, who was once the Mayor of the City of New York.

18. At all times relevant hereto, Defendant Matthew T. McCarthy was a Police Officer employed by the City of New York, and was acting under color of law.

19. At all times relevant hereto, Detective Michael Levay was employed by the City of New York and was acting under color of law.

20. At all times relevant hereto, Defendant Sgt. Milatta was a Sergeant employed by the City of New York, and acted as supervisor of the Police Officers who responded to the 911 call.  He was acting under color of law.

20. At all times relevant hereto, Defendant Sgt. James Coughlin was an NYPD Sergeant employed by the City of New York, and served as "Desk Officer" at the 123rd Precinct.  He was acting under color of law.

21. At all times relevant hereto, John Does(s) Supervisors were Members of the Service who approved the arrest and charges and were acting under color of law.

## THE FACTS

### SHOPRITE: We're All About Food. We're All About Savings. We're All About You.

22. The ShopRite on 3010 Veteran's Road West is nestled in a commercial part of Staten Island's South Shore, next to Fairview Park and only blocks from the Richmond Borough gun club. The area is a bastion of white conservatism and Trump support. It is one of the vanishingly small venues in New York where the fabulist, election-denying, disbarred attorney and late-night-talk-show-punchline former Mayor Rudolph Giuliani could expect to find a mostly affectionate audience. It is served by the 123rd precinct.

23. On June 26, 2022, Giuliani chose that location to appear at an impromptu campaign stop for his son, Andrew, who was running a semi-comical (or semi-serious) campaign for Republican nominee for Governor, based upon his last name and his role as the former President's golfing buddy.

24. Video footage of the event shows that it was a typical campaign "meet-and-greet." Giuliani mingled with the shoppers, who variously shook his hand, patted him on the back and shoulders, tapped him on the arm, and generally told him what a great guy he was. Indeed, a woman is shown in the video affectionately patting and rubbing Giuliani's back, demonstrating at least that minor physical contact was welcome at the event.

25. Not everyone present at that time was thrilled at Giuliani's appearance. Plaintiff Daniel Gill worked at the ShopRite and had done so for many years, in contrast to Giuliani who has not held an actual job in over a decade.

26. Plaintiff took a break from his work, walked up to Defendant Giuliani, patted or tapped him on the back, said "what's up scumbag," and walked away. That was the entire encounter between the two men.

27. Someone called 911 and reported that the Plaintiff had "put his hand" on Giuliani.

28. The video taken of the encounter shows Plaintiff either "tapping" or "patting" Giuliani on the back, in an effort to get his attention so Mr. Gill could deliver his message.  The videotape captures the full encounter between the two.

29. There is no reasonable view of the video that shows Plaintiff committing a crime.

30. Despite the fact that the 911 call did not allege that any actual crime was committed, Defendant McCarthy and P.O. Wiech came to the scene, to be joined by many other members of the NYPD, most of whom simply stood around looking big and are not named as defendants herein.

31. Defendant McCarthy was the first Police Officer to speak with Defendant Giuliani. Defendant Giuliani stated that he wanted Plaintiff arrested.

32. Defendant Giuliani stated that Plaintiff "smacked" him "very very hard on the back" and "I want him arrested." Defendant Giuliani then went on a mumbling rant about how there was "no crime" when he was Mayor, and "this is what happens under the scumbag Mayor that you have."

33. Defendant Giuliani specifically and clearly stated that "**I'm not injured.**" He went on to explain that he did not want an ambulance but wanted "a police car to put him in handcuffs."

34. Defendant McCarthy stated: **"we are going to see what we can do for you, OK?"** Defendant McCarthy, or P.O. Wiech, or both, referred to Defendant Giuliani as "the Mayor."

35. Plaintiff Gill, who was in the store security office, was then placed under police guard. He was not free to leave. He begged the various Police Officers to just watch the video, which they had obtained.

36. Defendant Sergeant Milatta then arrived on the scene. He spoke with Defendant Giuliani who then began concocting a story, now claiming that Plaintiff "hit" me on the back, "very very hard" **and** "my back hurts."

37. Without reviewing the video, Defendant Milatta directed that Plaintiff be handcuffed and taken to a "show up" to make sure that he was indeed the Rudy tapper. Once that was confirmed, Plaintiff was taken into custody. The video still had not been reviewed.

38. Defendant McCarthy was designated as the Arresting Officer.  He had already been told by Defendant Giuliani that he was **not** injured.  Defendant McCarthy then approached Defendant Giuliani to make sure "**My story is exactly straight**."

39. Defendant Giuliani lied, stating: "all of a sudden I feel this 'Bam' (sweeping his arm forward) that "knocks me forward a bit." Just to make sure the story was "straight," Defendant McCarthy asked directly: "You felt pain?" Defendant Giuliani parroted "I felt pain."

40. Plaintiff was arrested by the Defendant McCarthy, on orders from Defendant Milatta. They charged Plaintiff with a Class D violent felony. He was held in custody for 21 hours.

41. The false complaint and charge were approved by Defendants Levay (who did review the videotape) and Coughlin.

42. Defendant Supervisor(s) John Doe also approved the charges.

43. Plaintiff was denied a Desk Appearance Ticket by Defendant Coughlin on the false ground that there was an immediate need for an Order of Protection; even though the two men were complete strangers to each other, and it was Defendant Giuliani who walked into Plaintiff's place of business.

44. Defendant Giuliani's civil rights conspiracy with the Police Defendants was confirmed by Defendant Giuliani himself. Specifically, Defendant Giuliani stated publicly:

> The police were great. This is Staten Island, the cops out here, they are on their own. Some guy in the DA's office was trying to lower the charges. **And the cops said no, this is a seventy-eight-year-old guy, this is assault two, no assault three. This guy is going in!**

45. Defendant Giuliani further stated:

> It's a little different out here. They [police] have a lot more support here. Even the DA here is a lot better. So I think we have a chance of getting this guy prosecuted. This is a great example of the broken windows theory. You don't let a guy like this get away with something like this. Because then they try something worse.

46. The unsustainable charges were downgraded, as soon as the videotape was publicly released to, *inter alia*, assault in the 3rd degree. The Criminal Complaint, that was sworn to be Defendant McCarthy, states that Plaintiff:

> "[D]id strike [Giuliani] in the back, causing the [Giuliani] to stumble forward, and causing informant physical injury including, but not limited to, redness, swelling, and substantial pain to the back and left side of his body, as well as causing [Giuliani] to be placed in fear of physical injury….."

47. These statements were made by Defendant McCarthy despite the fact that Defendant Giuliani initially insisted to him that he was **not injured**, and was not afraid of anything Plaintiff Gill might do to him. Even when Defendant McCarthy coached Defendant Giuliani to say that the tap "hurt," he did not describe the pain as "substantial" at the time the Complaint was drafted. Moreover,

the videotape conclusively belied defendant Giuliani's contention that he

"stumble[d] forward."

48. On July 6, 2022, Defendant Giuliani swore to these allegations, knowing

they were false.

49. On September 21, 2022, the case was Adjourned in Contemplation of

Dismissal. Six months thereafter, it was dismissed.

50. Defendant Giuliani engaged in a pattern of very public, false statements

about Plaintiff:

a. Defendant Giuliani falsely stated that Plaintiff said to him: "You f'n this, you f'n that. He then says you're going to kill babies. Um, no not babies. You're going to kill women."

b. Defendant Giuliani falsely stated that Plaintiff appeared "drunk or high."

c. Defendant Giuliani mocked Plaintiff, referring to him as a "little squirt" and a "little shit," commenting "that little shit is not going to stop me," falsely stating that Plaintiff somehow want to "stop" defendant Giuliani from doing something.

d. Defendant Giuliani falsely referred to Plaintiff as part of the "criminals" who "were taught no respect by Joe Biden."

e. Defendant Giuliani falsely stated that Plaintiff was "probably looking for an eighty-five-year-old to knock over."

f. Defendant Giuliani falsely stated that "I worry about this little punk for you—because if he can come and hit me, a 70-year-old, next thing you know, he's going to hit you."

g. When the charges were downgraded, defendant Giuliani again falsely referred to Plaintiff as a "criminal," stating finally, I thought we had a DA in

New York in Staten Island who was a real DA in favor of protecting victims and not letting criminals go free."

51. Defendant Giuliani also engaged in a pattern of false and defamatory statements about the non-existent injury he suffered:

a. Defendant Giuliani falsely stated "All of a sudden, I feel a shot on my back—like somebody shot me. I went forward, but luckily I didn't fall down. Lucky I'm a 78-year-old who's in pretty good shape, because if I wasn't, I'd have hit the ground and probably would have cracked my skull."

b. Defendant Giuliani falsely stated: "I got hit as if a boulder hit me. It knocked me forward a step or two; it didn't knock me down, but it hurt tremendously."

c. Defendant Giuliani falsely claimed he was suffering from "swelling about his left scapula," that "his left arm hurt," that his "shoulder hurts like hell," that he has "a big lump on the back," and suggesting that the stents he had inserted for a pre-existing cardiac condition were a consequence of Mr. Gill's pat.

52. To date, Giuliani has not provided medical records which *clinically* substantiate any of these claims; there is nothing but his fabulously unreliable and false self-reporting.


**FIRST CAUSE OF ACTION**
(False arrest, 42 U.S.C. sec. 1983; NYPD defendants)

53. Paragraphs 1-52 are re-alleged.

54. At all times herein, the Police defendants were acting under color of State law.

12

55. Acting individually and in concert, the Police Defendants deprived Plaintiff of their rights under the First, Fourth and Fourteenth Amendments to the Constitution of the United States to be free of unreasonable seizure, to enjoy his liberty without unlawful interference therewith, and to criticize former and future public officials free of unlawful retribution.

## SECOND CAUSE OF ACTION
(Civil rights conspiracy, 42 U.S.C. Sec. 1985, all defendants)

56. Paragraphs 1-52 are re-alleged.

57. All defendants participated in an unlawful conspiracy, pursuant to 42 U.S.C. Sec. 1985, to deprive Plaintiff of his right to liberty, to his right to speak freely without retribution, and to be free from unreasonable seizures, in violation of his rights under the First, Fourth and Fourteenth Amendments to the Constitution of the United States.

## FOR A THIRD CAUSE OF ACTION
(False arrest, New York State tort law; Police defendants and City of New York)

58. Paragraphs 1-52 are re-alleged.

59. The Police Defendants, individually and in concert, detained, arrested, confined and caused the confinement of Plaintiff without any privilege or right to do so. Plaintiff was conscious of his confinement and did not consent to said confinement.

60. The City of New York is liable for their conduct pursuant to the doctrine of *respondeat superior*.

## FOR A FOURTH CAUSE OF ACTION
(Pendant jurisdiction; New York State tort law; defendant Giuliani.)

61. Paragraphs 1-52 are re-alleged.

62. Defendant Giuliani's public statements about Plaintiff and Plaintiff's conduct were false, were made negligently, recklessly and/or maliciously, were published through multiple third parties, caused Plaintiff to suffer loss of his job, threats, and damage to his reputation, and also were defamatory per se.

## FOR A FIFTH CAUSE OF ACTION
(Pendant jurisdiction; New York State tort law; defendant Giuliani)

63. Paragraphs 1-52 are re-alleged.

64. Defendant Giuliani's conduct and statements were unlawful and outrageous, made for the purpose of inflicting emotional distress on Plaintiff and did inflict said emotional distress.

## FOR A SIXTH CAUSE OF ACTION
(Pendant jurisdiction; New York State tort law; defendant Giuliani.)

65. Defendant Giuliani's false statements to law enforcement, including one that was made under oath and subject to prosecution for its falsity, and his false statement to the news media about Plaintiff and his conduct, negligently inflicted emotional distress upon Plaintiff.

## DAMAGES DEMAND

WHEREFORE, Plaintiff demands judgment against the Defendants as follows:

a. Compensatory damages of not less than $2,000,000.00.

b. Punitive damages against individual defendants.

c. Reasonable attorney's fees, together with costs and disbursements, pursuant to 42 U.S.C. Sec. 1988

d. For pre-judgment interest as allowed by law, and

e. For such other and further relief as this Court may deem just and proper.

_____
RONALD L. KUBY
RHIDAYA TRIVEDI
Law Office of Ronald L. Kuby
119 W. 23rd Street, Suite 900
New York, New York 10011
(212) 529-0223 (t)
(212) 529-0644 (f)
ronaldlkuby@gmail.com

*Attorneys for Claimant*

Dated:      New York, New York
            May 17, 2023