UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------- x
DANIEL GILL,

                     Plaintiff,

-v

RUDOLPH W. GIULIANI, THE CITY OF NEW YORK,
P.O. MATTHEW T. MCCARTHY,
DETECTIVE MICHAEL LEVAY
SGT. FNU MILATTA, SGT. JAMES COUGHLIN,
SUPERVISER(S) JOHN DOE(S),

                     Defendants.
------------------------------------------------------------------------- x

Case No.: 1:23-cv-04087

## DEFENDANT GIULIANI'S REPLY MEMORANDUM OF LAW
## IN FURTHER SUPPORT OF HIS
## <u>MOTION TO DISMISS THE AMENDED COMPLAINT</u>

Rudolph W. Giuliani
*Defendant Pro Se*

45 East 66th Street, 10th Fl.
New York, NY 10065

Defendant Rudolph W. Giuliani ("Defendant" or "Mr. Giuliani") respectfully submits this reply memorandum of law in further support of his motion to dismiss the Amended Complaint, dated September 12, 2023 (the "Amended Complaint" or "FAC") against him, in its entirety, pursuant to Fed. R. Civ. P. 12(b)(6).[1]

## I.    ARGUMENT

### A.  Plaintiff's Third Cause of Action for Defamation Fails Because All of the Proffered Statements are Unactionable Opinions

In the Moving Brief, Mr. Giuliani demonstrated that when viewing the statements at issue in their entirety, as the Court is required to do, the statements are non-actionable opinion, based on the established criteria set forth by the Court of Appeals in *Mann* and other cases. Mov. Br. 6-7.  The statements either lacked precise meaning, such as those calling Mr. Gill a "little squirt," "little shit," or "punk," or they were not capable of being proven true or false, such as those saying that Mr. Gill appeared high or drunk, or, most importantly, the heated circumstances and broader social context demonstrated that Mr. Giuliani is conveying an opinion, such as his statements that Mr. Gill was a "criminal" who was taught "no respect by Joe Biden."  As noted in the Moving Brief, "even apparent statements of fact may assume the character of statements of opinion, and thus be privileged, when made in public debate, heated labor dispute, or other circumstances in which an audience may anticipate the use of epithets, fiery rhetoric or hyperbole." *Steinhilber*, 68 N.Y.2d at 294. The comments stating that Mr. Gill might come after an 85-year old or that he was taught no respect by Joe Biden are clearly fiery rhetoric, or hyperbole, made in the aftermath of the incident.

In the Opposition, Plaintiff does not specifically address the content of the statements that he claims are defamatory.  Rather than addressing these statements in the Opposition, Plaintiff generally argues that his claim for defamation should not be dismissed because Mr. Giuliani's statements were mixed opinion wherein "the speaker knows certain facts, unknown to his audience…." (Opp. 2.) As an

---

[1] Unless otherwise noted, all capitalized terms shall have the same meaning ascribed to them in the Moving Brief.  *See*, ECF Dkt. 44.

initial matter, Plaintiff misstates the case precedent and relies on readily distinguishable cases to reach this incorrect conclusion that Mr. Giuliani's statements are mixed opinion and fact. Most importantly, there is no undisclosed fact that turn Mr. Giuliani's non-actionable opinions and, perhaps hyperbolic, statements into actionable defamatory statements of mixed opinions.

i.   *Plaintiff Misapplies the Case Law Surrounding Mixed Opinions, Which Actually Supports Mr. Giuliani's Argument That the Statements Cannot be Defamatory*

With respect to the legal standard, in the Opposition, Plaintiff ignores the well-settled standard that under New York law, the Court should avoid the "hypertechnical parsing" of written and spoken words for the purpose of identifying "possible 'fact[s]" that might form the basis of a defamation action. *See Gross v. New York Times Co.*, 603 N.Y.S.2d 813, 819 (N.Y. 1993); *Immuno AG v. Moor-Jankowski*, 77 N.Y.2d 235, 256 (N.Y. 1991).  In the Opposition, Plaintiff relies on two cases–*Germain v. M&T Bank Corp.*, 111 F.Supp.3d 506, 515-16 (S.D.N.Y. 2016) and *Gross*, 603 N.Y.S.2d 813.  Both of these cases are readily distinguishable and, in fact, help demonstrate why this case does not present mixed opinion based on undisclosed facts. *Gross* involved a series of investigative reports published by defendant New York Times between 1985 and 1986. The articles in question charged plaintiff, the former Chief Medical Examiner of the City of New York, with having mishandled several high profile cases and accused him of being "corrupt." In determining that the statements in the article were not just "rhetorical flourishes" or "speculative accusation," the Court reasoned that:

> "the accusation was made in the course of a lengthy, copiously documented newspaper series that was written only after what purported to be a thorough investigation. Having been offered as a special feature series rather than as coverage of a current news story, the disputed articles were calculated to give the impression they were "the product of some deliberation, not of the heat of [the] moment." Moreover, since the articles appeared in the news section rather than the editorial or "op ed" sections, the common expectations that apply to those more opinionated journalistic endeavors were inapplicable. Thus, the circumstances under which these accusations were published encourag[ed] the reasonable reader to be less skeptical and more willing to conclude that [they] stat[ed] or impl[ied] facts."

*Id*. at 820 (internal citation omitted).

In contrast to *Gross*, here, the statements made by Mayor Giuliani were not the product of lengthy investigation nor calculated to give the impression that they were the product of great deliberation and/or

of a thorough investigation into Mr. Gill's background. The statements were clearly meant to reflect Mr. Giuliani's reaction and response–some in jest, such as claiming that he was probably going to go after an 85-year old; some using political rhetoric, such as the statement that he was taught to be disrespectful by President Joe Biden; some in anger; and some with a serious tone.

In the other case, *Germain v. M&T Bank Corp*., 111 F.Supp.3d 506, 515-16 (S.D.N.Y. 2016), a representative of a bank intimated that a plaintiff, who was seeking to obtain a commercial real estate loan, was "no good," but also intimated he had ties to the Albanian mob. The offending bank employee also bolstered this intimated connection with the Albanian mob, stating "These people are all criminals" and that one of the plaintiffs had a lengthy criminal history which included "involve[ment] in selling illegal drugs." *Id.* at 517.  As that Court held–these allegations suggest that the bank employee based his opinion on facts not disclosed to the private investigator or that the statement was based on facts that may be proven or disproven.

Contrary to the intimations in *Germain*, there were no undisclosed facts in Mr. Giuliani's statement. The video of what transpired was freely available and was the topic of multiple news stories. Mr. Giuliani did not intimate anything that was undisclosed to any viewer and the statements when viewed in their entirety–as the Court is required to do, or even when viewed individually, cannot be proven or disproven because they are all based on Mr. Giuliani's opinion of Mr. Gill's appearance and the actions that transpired when Mr. Gill made contact with Mr. Giuliani.

Mr. Giuliani's statements are much more similar to those at issue in *Greenbelt Publ. Assn. v. Bresler*, 398 U.S. 1, 14 (1970) and *600 W. 115th St. Corp. v. Von Gutfeld*, 80 N.Y.2d 130, 143-144 (N.Y. 1992). In *Greenbelt*, a well-known land developer's opponents characterized the position he had taken in his negotiations with the city officials as "blackmail" with respect to a particular deal and the local newspaper used those words. In its finding that plaintiff did not state a claim for defamation, the court found that "even the most careless reader must have perceived that the word was no more than rhetorical hyperbole, a vigorous epithet used by those who considered Bresler's negotiating position extremely

3

unreasonable." *Id.* In *600 W. 115th St. Corp. v. Von Gutfeld*, 80 N.Y.2d 130, 143-144 (N.Y. 1992), the defendant, a concerned citizen speaking at a public hearing, made several statements in opposition to a proposal by the plaintiff-corporation to create a sidewalk cafe adjacent to its restaurant in Manhattan. In one of those statements, the defendant stated that "the lease and proposition [or composition] [at issue] is as fraudulent as you can get and it smells of bribery and corruption." In deciding that the statement could not be interpreted to mean that defendant committed fraud or bribery or "implying undisclosed defamatory facts as the basis" for an opinion, the Court of Appeals emphasized defendant's choice of the "colloquial and loose terms 'smells of' and 'fraudulent as you can get'" in the statements, stating that this was not "the language of someone inviting reasonable persons at a heated public hearing to find specific factual allegations in his remarks." *Id.* at 143. The court also noted that the remarks were:

> "a rambling, table-slapping monologue, much of it dealing with his past problems with the restaurant and his frustration with the government of New York City. It could not reasonably be heard as a factual presentation on what the plaintiff was doing to get its permit as much as an angry, unfocused diatribe about the restaurant's presence and life in New York City."
>
> *Id.* at 143-44.

Similar to *Von Gutfeld*, all of Mr. Giuliani's statements use colloquial and loose language, such as calling Mr. Gill "a little squirt," "a little shit," "a little punk," and even a "criminal," such that a listener would not expect Mr. Giuliani to be conveying specific factual allegations about Mr. Gill's future criminal plans to hunt elderly individuals. Rather, as in *Von Gutfeld*, Mr. Giuliani was clearly engaging in a "table-slapping monologue" that contains both political rhetoric and commentary about the state of New York City wherein Mr. Giuliani was expressing his frustration with what transpired. Based on the foregoing, Plaintiff cannot use the mixed opinion argument to salvage his claims for defamation.

With respect to the actual statements, there were no undisclosed facts that could turn Mr. Giuliani's opinions into actionable statements of mixed fact and opinion. In the Opposition, Mr. Gill does not assert any undisclosed facts upon which the statement might have been based, except that the claim "hinge[s] entirely upon whether Mr. Gill slapped him on the back, or merely tapped him to get his attention." (Opp. 4.) However, this is not an undisclosed fact and, as discussed *supra,* the Court should not ove rparse the

words in order to find an undisclosed fact. Here, the video of Mr. Gill hitting, or tapping, Mr. Giuliani was widely disseminated and covered by the press, so there was nothing undisclosed. A reasonable listener to Mr. Giuliani's comments would have seen the video or known the factual circumstances of the interaction. Additionally, whether Mr. Gill hit or tapped Mr. Giuliani is, itself, an unactionable opinion–not something that can be proven true or false–although the circumstances show this was certainly not the "minor physical contact [that] was welcome at the event," as Plaintiff alleges. Am. Compl. ¶ 24. Indeed, when viewing the video, it is clear that the contact was so forceful that it propelled Mr. Giuliani forward; forced Mr. Giuliani to stop talking; and a woman standing nearby immediately reached out to check on him.[2]

    *ii.*    *Falsity of Facts is Inapplicable and Unavailing to Salvage Plaintiff's Defamation Claim*

Next, Plaintiff attempts to salvage his defamation claim by arguing that "the predicate facts to Mr. Giuliani's so-called opinions are false, and as such, the motion to dismiss may not be granted" (Opp. 4), but, by Plaintiff's own admission, this is only applicable "if the predicate facts are disclosed but are false, such that the disparity between the stated facts and the truth would cause a reader to question the opinion's validity." (Opp. 4.) Here, Mr. Giuliani did not disclose any predicate fact. The video of what transpired speaks for itself.  Most importantly, Mr. Gill admits in the Amended Complaint that he made contact with Mr. Giuliani and shouted at him, "what's up scumbag" (Am. Compl. ¶ 3), which, in and of itself, should be sufficient to demonstrate that the predicate facts are not untrue, or at least are substantially similar to what Mr. Giuliani maintains happened, such that two different listeners would think the statements have the same meaning. *See*, *Printers II, Inc. v. Professionals Publishing, Inc.*, 784 F.2d 141, 146 (2d Cir. 1986) (Under New York law, "it is not necessary to demonstrate complete accuracy to defeat a charge of libel.

---

[2] Moreover, Plaintiff explicitly alleges in the Complaint, that Mr. Giuliani is "a fabulist, election-denying, disbarred attorney and late-night-talk-show-punchline former Mayor,"(Am. Compl. ¶ 23). Mr. Gill should not be allowed to write Mr. Giuliani off as having a reputation for being a "fabulist" while simultaneously attempting to avail himself of defamation laws after hitting, or tapping, Mr. Giuliani. Mr. Gill also alleges that Mr. Giuliani has not had a real job in over a decade and that his son was running for Governor based "on his last name" and the fact that he was "golfing buddies" with President Trump. (Am. Comp. ¶ 23, 25.) Mr. Gill cannot have it both ways. While Mr. Giuliani denies Mr. Gill's description as "a fabulist, election-denying, disbarred attorney and late-night-talk-show-punchline former Mayor," this directly goes to show how a reasonable listener would view the statements–as non-actionable opinions.

It is only necessary that the gist or substance of the challenged statements be true"); *Fleckenstein v. Friedman*, 266 N.Y. 19, 23, 193 N.E. 537, 538 (N.Y. 1934) ("A statement is substantially true if the statement would not 'have a different effect on the mind of the reader from that which the pleaded truth would have produced'")

With this admission of contact, while Mr. Gill can deny that the contact was forceful, it was still undisputedly made, which negates the falsity of the statement.  There are myriad cases of non-actionable statements, where the Courts have held that the stretch between the statement and the admitted truth may be tenuous but still the overall "gist" or "sting" cannot be said to be "substantially" different. *See e.g., Guccione v. Hustler Magazine, Inc.*, 800 F.2d 298, 302-03 (2d Cir. 1986), (holding that statement which implied that plaintiff was then currently an adulterer was substantially true where plaintiff had ceased being an adulterer but had "unabashedly committed adultery" for thirteen of seventeen years); *Printers II* at 146-47 (even though statement was "literally false" and "may have impliedly misrepresented" that plaintiff was overdue in paying its bills, statement was nonetheless substantially true because plaintiff was disputing the bills "with such vigor" that plaintiff had no intention of paying the bills when due); *Corporate Training Unlimited, Inc. v. National Broadcasting Co.*, 981 F. Supp. 112, 120-21 (E.D.N.Y. 1997) (statement that plaintiff was "forced to leave the military for less than satisfactory service" held to be substantially true where plaintiff, rather than face a court martial, submitted a request for discharge "for the good of the service" after it was discovered that plaintiff had engaged in various "financial improprieties") (internal quotation marks omitted).

Here, Plaintiff admits that he made contact with Mr. Giuliani. He also admits that he recognized Giuliani to be a politician and the father of a gubernatorial candidate with who he did not like and with whom he disagreed.  Plaintiff also admits that he shouted "What's up scumbag?" into Mr. Giuliani's face. Am. Compl. ¶ 3. Thus, even if the force of the contact is in dispute and even considering the allegations

in a manner most favorable to Gill, the overall "gist" or "sting" of any predicate facts cannot be said to be substantially different, given the admitted interaction.[3]

Plaintiff also asserts that "Mr. Giuliani knows that his statements are false; that Mr. Gill did nothing more than tap him and speak to him, and that his injuries, fear, and accusations of criminality against Mr. Gill are all fiction." Opp. 5. This is the same argument as the previous argument regarding the falsity of the predicate facts and for the same reasons, cited *supra* in the prior section, this cannot salvage Mr. Gill's claim because of the substantial truth underlying Plaintiff's statements. The accusations of criminality were rhetoric and in the heat of the moment, the NYPD had a right to investigate this contact against the former mayor and father of gubernatorial candidate. Mr. Gill cannot credibly make allegations of the fear that Mr. Giuliani faced, and the force is substantiated by the video, including a woman standing next to Mr. Giuliani who without delay began rubbing when Mr. Giuliani was "tapped."[4]

---

[3] Plaintiff attempts to rely on a myriad of cases to support the argument that when a plaintiff alleges that the facts are false, a motion to dismiss for defamation must be denied, but this is not a blanket rule and all of the cases Plaintiff relies upon are readily distinguishable.  For example, *Jewell*, cited *supra,* involved the reporting accusing Richard Jewell of perpetrating the well-known Atlanta Olympic Park bombing. The reports accused Jewell of being the main suspect based on prior work history and job performance, and referred to him as a "home-grown failure," a "disaster," and a "disgraced former deputy," and further portrayed Mr. Jewell, a security guard, as an individual with an aberrant and/or violent personality. None of this–down to Mr. Jewell's role in the bombing–was remotely true. In contrast, here, Mr. Gill indisputably made contact with Mr. Giuliani. The actual statements in *Jewell*, e.g., calling someone a "disgraced former deputy" and alluding to a violent personality who attempted to commit a bombing, can be proven true or false and very different from Mr. Giuliani's statements referring to Mr. Gill as a punk or someone who needs to be taught respect. In another example–*Como v. Riley*, 287 A.D.2d 416 (1st Dep't 2001)(Opp. 4-5), the Court reinstated a defamation claim dismissed by the lower court when the defendants' views of the plaintiff premised on a false fact, alleged in the same e-mail, that "the plaintiff's office cubicle contained a statuette of a black man hanging from a white noose," but, unlike the allegations in *Como*, here, we have the benefit of Plaintiff's admission of contacting Mr. Giuliani and shouting at him, as well as, video to back up Mr. Giuliani's narrative of what transpired, both of which were lacking in *Como*. In a third example–*Silsdorf v. Levine*, 59 N.Y.2d 8 (N.Y. 1983)(Opp. 4)–the Court of Appeals reinstated a defamation claim based on a letter accusing a former mayor of corruption and criminal activity–not only because the plaintiff-mayor alleged the underlying facts (relieving the town board of responsibility, allowing a ferry to dock in the town in violation of a board directive; and allowing excursion boats to dock in town in violation of an ordinance) were false, but because the plaintiff submitted a detailed affidavit demonstrating why the predicate facts were false. Again, *Silsdorf* is readily distinguishable from the instant action where Plaintiff admits to making contact and shouting at the former mayor.

[4] Finally, Plaintiff uses the general defamation law to argue that his claim for defamation against Mr. Giuliani must be sustained because Mr. Giuliani's statements subjected him to derogation, public hatred, shame, and degradation by accusing Mr. Gill of hunting the elderly. Opp. 5-6. It was not Mr. Giuliani's statements which subjected Mr. Gill to degradation and hatred; it was Mr. Gill's actions and news coverage of them. Mr. Giuliani is allowed to comment on his view of what transpired. Secondly, Mr. Giuliani's comments were tongue-in-cheek remarks about Mr. Gill going after an 85-year old.  As noted *supra*, it was apparent to virtually everyone that Mr. Gill contacted, or hit, Mr. Guiliani because he was "Rudy Giuliani" and not because he was a septuagenarian.

**B. Plaintiff's Fourth Cause of Action for Intentional Infliction of Emotional Distress, Must Be Dismissed For Failing to Meet the Rigorous Pleading Standard For This Cause of Action**

In the Moving Brief, Defendant demonstrated that based on well-settled New York Court of Appeals law, a claim for intentional infliction of emotional distress is "highly disfavored," because of the "rigorous" elements namely, that Plaintiff must plead conduct that is "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *See*, Mov. Br. 9-11, citing *Murphy v. Am. Home Prods. Corp.*, 448 N.E.2d 86, 90 (N.Y. 1983)); *Cardoso v. Wells Fargo Bank, N.A.*, No. 21-CV-8189, 2022 U.S. Dist. LEXIS 171105, *18-19 (S.D.N.Y. Sept. 20, 2022).) Mr. Giuliani further demonstrated that Plaintiff has failed to state a cause of action for intentional infliction of emotional distress here, because Plaintiff has failed to allege as a matter of law "extreme and outrageous conduct" and that Mr. Giuliani caused emotional distress–two requisite elements to state a claim for intentional infliction of emotional distress. *See* Mov. Br. 10-11.

In the Opposition, Plaintiff claims, without any support, that the "extreme and outrageous" conduct was that Mr. Giuliani purportedly denied being injured immediately following the incident; insisted that the police arrest Mr. Gill; commented publicly that the Staten Island DA should have charged Mr. Gill more seriously; publicly accused Mr. Gill of hunting the elderly; and kept Mr. Gill's name in the media by making a series of radio and television appearances wherein he repeatedly defamed Mr. Gill and degraded his character. Opp. 7. As a matter of law, none of the above constitutes "extreme and outrageous" conduct. Notably, Plaintiff does not provide any case law to analogize why his claim for IIED should be sustained. This is likely because no analogous precedent exists.

To the contrary, myriad courts have dismissed claims for intentional infliction of emotional distress based on, objectively, more "extreme and outrageous" conduct than the conduct at issue here, when even taking Mr. Gill's version of events, it is beyond dispute that Mr. Gill made contact with Mr. Giuliani in an unwanted manner. *See Nungesser v. Columbia Univ.*, 169 F.Supp.3d 353, 374-75 (S.D.N.Y.

2016) (dismissing IIED claim against university for its treatment of plaintiff accused of rape, explaining, "even a false charge of sexual harassment does not rise to the level of outrage required")(citation omitted); *Wolff v. City of N.Y. Fin. Servs. Agency*, 939 F.Supp. 258, 264 (S.D.N.Y. 1996) (dismissing IIED claim where defendant falsely accused plaintiff of sexual harassment); *Mohamed v. Marriott Int'l, Inc.*, 905 F.Supp. 141, 157-58 (S.D.N.Y. 1995) (dismissing IIED claim where defendant falsely accused plaintiff of stealing to pay credit card debt); *Herlihy v. Metro. Museum of Art*, 633 N.Y.S.2d 106, 114 (1st Dep't 1995) (dismissing IIED claim where plaintiff alleged that defendant falsely accused her of using ethnic slurs). Even cases involving false accusations that have been reported to authorities (which the accusations here are not false and it is undisputed that Mr. Giuliani did not call the police) do not suffice for an IIED claim, absent additional outrageous behavior. *See*, *Rivers v. Towers, Perrin, Forster & Crosby, Inc.*, 07-cv-5441, 2009 U.S. Dist. LEXIS 26301, *23 (S.D.N.Y. Mar. 27, 2009)(providing false information to the police is insufficient to state an IIED claim); *Silver v. Kuehbeck*, No. 05 Civ.35 (RPP), 2005 U.S. Dist. LEXIS 26956, 2005 WL 2990642, at *4, 7-8 (S.D.N.Y Nov. 7, 2005)(motion to dismiss granted on IIED in case where plaintiff alleged defendants had made false statements to the police to cause his arrest). With conduct here that is woefully insufficient to plead "extreme and outrageous conduct," Plaintiff's Fourth Cause of Action must be dismissed as a matter of law.

Moreover, with regard to the specific allegations, Mr. Gill does not dispute that he made contact with Mr. Giuliani, the former mayor of New York City and father of a gubernatorial candidate. The NYPD had a right to investigate and arrest him until further details of the attack (or contact) emerged, so this cannot form the basis for "extreme and outrageous" conduct. As demonstrated *supra*, Mr. Giuliani's comments regarding the charges and how Mr. Gill might "come after" someone else were cheeky quips that come with the territory of someone that attacks (or forcefully "taps" or "pats") Mr. Giuliani like he did. Mr. Giuliani had a right to respond and share his narrative of the story, so this also cannot form the basis for "extreme and outrageous" conduct sufficient to sustain a claim for IIED.

Finally, in Opposition, Plaintiff also does not dispute Mr. Giuliani's argument that Plaintiff's claims fail for insufficiently pleading that Mr. Giuliani caused Mr. Gill's emotional distress. (Mov. Br. 11.) The Amended Complaint specifically acknowledges that Mr. Giuliani did not call 911 and, in Opposition, Plaintiff acknowledges that there are no allegations in the Amended Complaint that Mr. Giuliani told his supporters to threaten Mr. Gill or not to give him a job. Opp. 6. The problems that Mr. Gill is facing were caused by his own actions – hitting and shouting at Mr. Giuliani. Additionally, the Opposition does not address that Mr. Gill has admitted that his mental health issues were pre-existing (Am. Compl. ¶ 65), further demonstrating why Mr. Gill's IIED claim must be dismissed.

### C. Plaintiff's Fifth Cause of Action for Negligent Infliction of Emotional Distress Must be Dismissed as Against Mr. Giuliani Because No Duty Was Owed to Plaintiff And Plaintiff Has Not Alleged Fear for His Safety

In the Moving Brief, Mr. Giuliani established that Plaintiff's claim for negligent infliction of emotional distress fails as a matter of law, because Plaintiff has not and cannot allege the requisite element that Mr. Giuliani owed a duty to Plaintiff.  In a footnote to the Opposition, "Plaintiff concedes that for the purposes of negligent infliction of emotional distress, Mr. Giuliani did not legally owe Mr. Gill a specific duty of care." Opp. 1. This should end the analysis into whether Plaintiff has stated a cause of action for negligent infliction of emotional distress against Mr. Giuliani and the cause of action should be dismissed for this reason alone.[5]

### II. CONCLUSION

Based on the foregoing additional reasons, as well as those set forth in the Moving Brief, the Court should dismiss the Amended Complaint in its entirety against Mr. Giuliani.

---

[5] After conceding that Mr. Giuliani did not owe any duty to Plaintiff, Mr. Gill asks the Court to consider that "the law clearly does not anticipate the circumstances herein, whereby a powerful public figure is able to commandeer the criminal punishment system to retaliate against an individual merely for voicing an opinion." Opp. 1, FN1. Plaintiff concedes that he did much more than voice an opinion–he made contact with Mr. Giuliani, whether it was a tap, as he claims, or a slap, as Mr. Giuliani asserts (and the video and public's reaction to the contact supports). Moreover, Plaintiff argues that Mr. Giuliani was a "powerful public figure" who "commandeer[ed] the criminal punishment system," to suit his narrative, while simultaneously alleging in the Complaint that Mr. Giuliani was a "fabulist, election-denying, disbarred attorney and late-night-talk-show-punchline former Mayor" Am Compl. ¶ 23, which belies that he was a powerful enough to "commandeer the criminal justice system." Plaintiff's analysis is unsupported by law and by the facts and therefore, as with the other causes of action, the Fifth Cause of Action should be dismissed as a matter of law.

Dated: November 21, 2023

/s/ Rudolph W. Giuliani

Rudolph W. Giuliani
*Defendant Pro Se*

45 East 66th Street, 10th Fl.
New York, NY 10065