```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------- X
                                          :
DANIEL GILL,                              :
                         Plaintiff,       :
                                          :      23cv4087 (DLC)
             -v-                          :
                                          :      OPINION AND
RUDOLPH GIULIANI et al.,                  :         ORDER
                         Defendants.      :
                                          :
                                          :
----------------------------------------- X
```

APPEARANCES:

For plaintiff:
Rhidaya Shodhan Trivedi
Ronald L. Kuby
Law Office of Ronald L. Kuby
119 West 23rd St. Suite 900
New York, NY 10011

Defendant Rudolph Giuliani, appearing pro se

For defendants The City of New York, P.O. Matthew T. McCarthy, Detective Michael Levay, Sergeant Milatta, and Sergeant James Coughlin:
Inna Shapovalova
New York City Law Department
100 Church St.
New York, NY 10007

DENISE COTE, District Judge:

Daniel Gill has sued Rudolph Giuliani for defamation and the City of New York ("City") and New York City Police Officers for his false arrest. For the following reasons, the defendants' motions to dismiss are largely granted.

**Background**

The following facts are taken from the plaintiff's amended complaint ("FAC") and documents integral to it. They are assumed to be true for purposes of evaluating the motions to dismiss filed by the defendants.

Gill was working at a ShopRite store in Staten Island on June 26, 2022, when Guiliani entered the store to participate in a meet-and-greet event in support of his son's campaign for Governor. Gill approached Giuliani from behind, placed his hand on Giuliani's back, and said "what's up, scumbag". (The "Incident"). The FAC describes the contact as a pat or tap.

A soundless video of the Incident reflects the following: Giuliani was speaking to a small group of people in a store aisle. Gill approached Giuliani from behind and briefly placed an open palm on Giuliani's back while walking past him. Gill then walked around the group of people and out of sight, going down another aisle of the store.

Someone placed a 911 call and said that Gill had put his hand on Giuliani. Defendant Officer Matthew McCarthy and another officer responded to the call. Giuliani told the officers that Gill had smacked him very, very hard on the back and that he wanted Gill arrested. Gill, who was placed in custody, begged the officers to watch the video. When defendant

2

Sergeant Milatta arrived, Giuliani told him that Gill had hit him very, very hard on his back and his back hurts. Upon further questioning, Giuliani reported that "all of a sudden I feel this 'bam'" that knocked me forward a bit. He explained again that he felt pain.

Gill was taken to the precinct and held for 21 hours. At the time of the arrest, no officer had watched the video of the Incident. Defendants Detective Michael Levay and Sergeant James Coughlin approved the complaint, which charged Gill with a Class D felony. The complaint, to which defendant McCarthy swore, stated that Gill "did strike [Giuliani] in the back" causing him to stumble forward and causing him "physical injury including, but not limited to, redness, swelling, and substantial pain to the back and left side of his body," as well as placing him in fear of physical injury. Defendant Levay approved the complaint after reviewing the video.

On July 6, Giuliani swore to charges, which the FAC contends were "false." The video was eventually released to the public. After the video was released, the charges were downgraded to assault in the third degree, a misdemeanor. On September 21, 2022, the case was adjourned in contemplation of dismissal, and then dismissed six months later.

The FAC asserts that Gill was injured by this incident. He was placed in fear for his safety and could not return to the store, where he had been employed for five years. Instead, he was given a night shift to work at another store at less than half his prior salary. He has experienced mental health challenges as well.

On May 17, 2023, Gill filed this action against each of the defendants. In response to a motion to dismiss, Gill filed the FAC on September 11. In the FAC, he brings false arrest claims against the City and four named NYPD officer defendants (the "Officer Defendants" and, together, the "City Defendants") pursuant to 42 U.S.C. § 1983 and New York State law. He brings claims against Giuliani for defamation, intentional infliction of emotional distress and negligent infliction of emotional distress. Giuliani and the City Defendants brought motions to dismiss the FAC on September 18 and October 10, respectively. The motions were fully submitted by November 21. In the meantime, Giuliani filed for bankruptcy and this action was automatically stayed. The bankruptcy proceedings ended on August 2, 2024. On November 12, this action was reassigned to this Court.

## Discussion

Giuliani and the City Defendants have each filed motions to dismiss all the claims brought against them in the FAC. Giuliani's motion will be addressed first.

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a party "must plead enough facts to state a claim to relief that is plausible on its face." Green v. Dep't of Educ. of N.Y., 16 F.4th 1070, 1076-77 (2d Cir. 2021) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Vengalattore v. Cornell Univ., 36 F.4th 87, 102 (2d Cir. 2022) (quoting Ashcroft v. Iqbal, 566 U.S. 662, 678 (2009)).  "In determining if a claim is sufficiently plausible to withstand dismissal," a court "accept[s] all factual allegations as true" and "draw[s] all reasonable inferences in favor of the plaintiffs." Melendez v. City of N.Y., 16 F.4th 992, 1010 (2d Cir. 2021) (citation omitted).  "On a motion to dismiss, a court may consider extrinsic materials if they are integral to the complaint or an appropriate subject for judicial notice." Michael Grecco Productions, Inc. v. RADesign, Inc., 112 F.4th 144, 148 n.1 (2d Cir. 2024) (citation omitted).

I.  Giuliani

The FAC brings three claims against Giuliani.  Gill has consented to dismissal of his claim for negligent infliction of emotional distress.  As Giuliani pointed out in his motion, Gill has not pleaded that Giuliani owed him any duty, which is a necessary element of that claim.  The remaining claims are for defamation and intentional infliction of emotional distress.  Only portions of the defamation claim survive.

A. Defamation

At paragraphs 51 and 52 of the FAC, Gill lists ten statements by Giuliani which Gill contends were defamatory.  Only two of the statements survive.

Under New York law, a plaintiff must plead the following five elements of a defamation claim:

> (1) a written defamatory statement of and concerning the plaintiff, (2) publication to a third party, (3) fault, (4) falsity of the defamatory statement, and (5) special damages or per se actionability.

Palin v. N.Y. Times Co., 940 F.3d 804, 809 (2d Cir. 2019).  "Since falsity is a necessary element of a defamation cause of action and only facts are capable of being proven false, it follows that only statements alleging facts can properly be the subject of a defamation action."  North Shore Towers Apartments Incorp. v. Kozminsky, 193 N.Y.S.3d 310, 312 (2d Dep't 2023)

(citation omitted).  New York law "protects derogatory statements which may be categorized as 'opinion' as opposed to 'fact.'"  Chau v. Lewis, 771 F.3d 118, 128 (2d Cir. 2014).  The determination of whether a statement is an allegation of fact or opinion is a question of law.  Id.  Statements that "have a precise, unambiguous and definite meaning and can be objectively characterized as true or false" are more likely to be characterized as statements of fact.  Id.

If a statement is found to contain an opinion, "the court must next determine "whether the statement is 'pure opinion' (and thus non-actionable) or 'mixed opinion' (and therefore actionable)."  Id. at 129.  Pure opinion is a "statement of opinion which is accompanied by a recitation of the facts upon which it is based or does not imply that it is based on undisclosed facts."  Id. (citation omitted).  Mixed opinion, in contrast, is "an opinion that does imply a basis in undisclosed facts, or facts known only to the author, and is actionable."  Id. (emphasis in original).

In New York, a plaintiff cannot sustain a defamation claim if the statement is not "of and concerning plaintiff."  Id.  The plaintiff must sufficiently allege that "the reading public acquainted with the parties and the subject would recognize the plaintiff as a person to whom the statement refers."  Elias v.

7

Rolling Stone LLC, 872 F.3d 97, 104-5 (2d Cir. 2017) (citation omitted). "Although it is not necessary for the plaintiffs to be named in the publication, they must plead and prove that the statement referred to them and that a person hearing or reading the statement reasonably could have interpreted it as such." Three Amigos SJL Rest., Inc. v. CBS News Inc., 28 N.Y.3d 82, 86 (2016). Statements characterizing "events" can also be considered "of and concerning" a plaintiff if the statements are easily understood as relating to an event involving the plaintiff. Zervos v. Trump, 94 N.Y.S.3d 75, 89 (1st Dep't 2019) (citation omitted). This burden is "not a light one." Three Amigos, 28 N.Y.3d at 86. Nevertheless, at the pleading stage, "the plaintiff need only plead sufficient facts to make it plausible -- not probable or even reasonably likely -- that a reader familiar with the plaintiff would identify the plaintiff as the subject of the statements at issue." Palin, 940 F.3d at 816 (citation omitted).

    As for the seven statements in paragraph 51 of the FAC, only one survives. That statement, the first one listed in the paragraph, asserts that "Giuliani falsely stated that Plaintiff said to him: 'You fn this, you fn that. He then says you're going to kill babies. Um, no not babies. You're going to kill women.'" This is a statement of fact. The defendant represents

8

that Gill made these statements to him.  While Giuliani argues that the claim should be dismissed because the statement is confusing and should be understood, in context, as Giuliani's opinion of what Gill said, that argument fails.  Giuliani is making a statement of fact as to what the plaintiff said; it is not a statement of opinion.

The remaining six statements in paragraph 51, however, must be dismissed because they are either statements of pure opinion or do not concern Gill.  The claims that must be dismissed are:

- Defendant Giuliani falsely stated that Plaintiff appeared "drunk or high."

- Defendant Giuliani mocked Plaintiff, referring to him as a "little squirt" and a "little shit," commenting "that little shit is not going to stop me," falsely stating that Plaintiff somehow wants to "stop" defendant Giuliani from doing something.

- Defendant Giuliani falsely referred to Plaintiff as part of the "criminals" who "were taught no respect by Joe Biden."

- Defendant Giuliani falsely stated that Plaintiff was "probably looking for an eighty-five-year old to knock over."

- Defendant Giuliani falsely stated that "I worry about this little punk for you -- because if he can come and hit me, a 70-year-old, next thing you know, he's going to hit you."

- When the charges were downgraded, defendant Giuliani again falsely referred to Plaintiff as a "criminal," stating finally, "I thought we had a DA in New York in Staten Island who was a real DA in favor of protecting victims and not letting criminals go free."

9

In opposing this motion, Gill does not defend any one of these statements specifically as being defamatory. He does argue generally, however, that the FAC's claims are not statements of pure opinion but rather statements of "mixed opinion". These are not statements of mixed opinion. Examining the context, no listener would have understood Giuliani to possess any knowledge of undisclosed facts. There is no suggestion that Giuliani and Gill had any contact apart from the Incident or that Giuliani had learned anything more about Gill than could be gleaned from that single interaction. The claims based on these six statements are therefore dismissed.

The remaining three statements, which are contained in paragraph 52 of the FAC, concern Giuliani's description of his injury. The FAC asserts that the statements are false and defamatory. The statements are:

- Defendant Giuliani falsely stated "All of a sudden, I feel a shot on my back -- like somebody shot me. I went forward, but luckily I didn't fall down. Lucky I'm a 78-year-old who's in pretty good shape, because if l wasn't, I'd have hit the ground and probably would have cracked my skull."

- Defendant Giuliani falsely stated: "I got hit as if a boulder hit me. It knocked me forward a step or two; it didn't knock me down, but it hurt tremendously."

- Defendant Giuliani falsely claimed he was suffering from "swelling about his left scapula," that "his left arm hurt," that his "shoulder hurts like hell," that he has "a big lump on the back," and suggesting that the stents

>      he had inserted for a pre-existing cardiac condition were
>      a consequence of Mr. Gill's pat.

The first two of these statements and portions of the third statement do not contain facts concerning the plaintiff that are capable of being proven false. A person's subjective experience of pain, while it may be real, is typically understood as describing that person's reaction and therefore is not actionable. The third statement, however, includes claims that Giuliani said that Gill's contact with him produced a swelling near his scapula and a lump on his back. While Giuliani argues that these statements are not "of and concerning" Gill, the FAC adequately pleads that a listener would have understood these statements to refer to the objective effects of the Incident and to Gill.

Finally, the FAC does not plead with sufficient particularity the actual statements made by Giuliani regarding his stents. As a result, that portion of the defamation claim is also dismissed.

B. Intentional Infliction of Emotional Distress

Gill next brings a claim against Giuliani for intentional infliction of emotional distress. Under New York law, an intentional infliction of emotional distress claim requires a plaintiff to show "(1) extreme and outrageous conduct; (2) an intent to cause severe emotional distress, (3) a causal

11

connection between the conduct and injury, and (4) severe emotional distress." Specht v. City of New York, 15 F.4th 594, 606 (2d Cir. 2021).  To meet this standard, the conduct must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society." Id. (citation omitted).  The conduct may consist of a single sufficiently extreme and outrageous act, or a series of acts that in isolation are not sufficiently extreme and outrageous but "taken together . . . amount to a deliberate and malicious campaign of harassment." Rich v. Fox News Network, LLC, 939 F.3d 112, 122 (2d Cir. 2019).  Intentional infliction of emotional distress is a "highly disfavored tort under New York law . . . to be invoked only as a last resort." Turley v. ISG Lackawanna, Inc., 774 F.3d 140, 158 (2d Cir. 2014) (citation omitted).

Gill asserts that Giuliani's conduct, including insisting that the police arrest Giuliani and repeatedly insulting his character in radio and television appearances, was outrageous and that Giuliani engaged in it for the purpose of inflicting emotional distress on Gill.  However unusual the alleged conduct described in the FAC may have been, the described conduct does not meet the high bar necessary to state a claim for intentional

infliction of emotional distress.  Gill cites no authority for the proposition that Giuliani's behavior was so extreme and outrageous as to be regarded as utterly intolerable in a civilized society.  This claim therefore fails.

II.  City Defendants

The FAC brings two claims against the City and the Officer Defendants for false arrest.  One claim, against the Officer Defendants, is for a violation of 42 U.S.C. § 1983 and the First, Fourth, and Fourteenth Amendments of the Constitution.  The second claim, against both the City and the Officer Defendants, is for false arrest in violation of New York State common law.  The FAC asserts that the City is liable for the Officer Defendants' conduct pursuant to the doctrine of respondeat superior.

The City Defendants move to dismiss both claims because there was probable cause for Gill's arrest and, in the alternative, on the ground that the Officer Defendants have qualified immunity.  These claims are dismissed.

A false arrest claim under either federal or New York law requires a plaintiff to plead that "(1) the defendant intended to confine him, (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement and (4) the confinement was not otherwise

privileged." Ackerson v. City of White Plains, 702 F.3d 15, 19 (2d Cir. 2012) (citation omitted). "To avoid liability for a claim of false arrest, an arresting officer may demonstrate that either (1) he had probable cause for the arrest, or (2) he is protected from liability because he has qualified immunity." Simpson v. City of New York, 793 F.3d 259, 265 (2d Cir. 2015).

Probable cause is a complete defense to an action for false arrest brought under New York law or § 1983. Ackerson, 702 F.3d at 19. Probable cause to arrest exists when "the historical facts, viewed from the standpoint of an objectively reasonable police officer, provide knowledge or reasonably trustworthy information sufficient to warrant a person of reasonable caution" to believe that an offense has been or is being committed by the person to be arrested. Rupp v. Buffalo, 91 F.4th 623, 638-9 (2d Cir 2024) (citing Ornelas v. United States, 517 U.S. 690, 696 (1996)). The existence of probable cause for an arrest "must be determined on the basis of the information reasonably available to the arresting officer at the time of the arrest." Id. at 639 (citation omitted) (emphasis in original). It "is not relevant whether probable cause existed with respect to each individual charge, or, indeed, any charge actually invoked by the arresting officer at the time of the arrest." Jaegly v. Couch, 439 F.3d 149, 154 (2d Cir. 2006); see also

14

Devenpeck v. Alford, 543 U.S. 146, 153 (2004). An officer is "not required to investigate an individual's innocent explanations as to an alleged crime, nor to resolve all credibility issues between witnesses, before making an arrest based on probable cause." Washington v. Napolitano, 29 F.4th 93, 98 (2d Cir. 2022).

The City Defendants contend that there was probable cause to arrest Giuliani for a violation of § 240.26, which defines harassment in the second degree as follows:

> A person is guilty of Harassment in the Second Degree when, with intent to harass, annoy or alarm another person[] he or she strikes, shoves, kicks or otherwise subjects such other person to physical contact, or attempts or threatens to do the same.

N.Y. Penal Law § 240.26.

Accepting the facts as pleaded in the FAC, the Officer Defendants had probable cause to arrest Gill for harassment in the second degree based on the information reasonably available to them at the time of Gill's arrest. The police responded to a 911 call. Giuliani told Officer McCarthy that Gill had "smacked him very, very hard on the back." When Sergeant Milatta arrived, Giuliani told him that Gill had "hit him very, very hard on his back" and that he felt pain. Although Detective Levay is alleged to have watched the security camera video at the time he approved the complaint, none of the defendants had

15

watched the video at the time of the arrest, and they did not have a duty to investigate Gill's protestations of innocence.

The plaintiff argues that there was no probable cause to arrest him for harassment in the second degree because he merely patted or tapped Giuliani on the back and that § 240.26 is properly confined to strikes, shoves, kicks and the like.  See People v. Bartkow, 96 N.Y.2d 770, 772 (2001).  He further argues that there was no evidence that he had the requisite intent to annoy, harass, or alarm Giuliani.  These arguments fail.

The FAC pleads that Giuliani described Gill's contact with him as a painful hit which caused him to stumble forward and almost fall.  This is sufficient to constitute either a strike or shove forbidden by law.  As for the element of intent, police officers are "entitled to rely on the implications of the information known to [them] in assessing whether [the plaintiff] possessed" this intent.  Krause v. Bennett, 887 F.2d 362, 371 (2d Cir. 1989).  Based on the information provided by the complaining witness, there was probable cause to arrest Gill for harassment in the second degree.  It is therefore unnecessary to reach the issue of whether the individual defendants are also protected by the doctrine of qualified immunity.

## Conclusion

The October 10, 2023 motion to dismiss brought by the City of New York and the Officer Defendants is granted. All claims against the City of New York and the Officer Defendants are dismissed. Defendant Giuliani's September 18, 2023 motion to dismiss is granted in part. The claims against Giuliani for intentional infliction of emotional distress and negligent infliction of emotional distress are dismissed. The claim against Giuliani for defamation survives as to the statements indicated herein.

Dated:   New York, New York
         November 21, 2024

                                                         DENISE COTE
                                    United States District Judge